IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ELAINE K. McADAMS,
Plaintiff,

vs. Case No. 07-1404-MLB

MICHAEL J. ASTRUE,
Commissioner of
Social Security,
Defendant.

RECOMMENDATION AND REPORT

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the

correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

gainful activity (SGA). The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability. If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a “substantial gainful activity.” At step two, the agency will find non-disability unless the claimant shows that he or she has a “severe impairment,” which is defined as any “impairment or combination of impairments which significantly limits [the claimant’s] physical or mental ability to do basic work activities.” At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. If the claimant’s impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II. History of case**

On May 21, 2007, administrative law judge (ALJ) Edmund C. Werre issued his decision (R. at 11-20). Plaintiff alleges disability beginning May 11, 2004 (R. at 11). Plaintiff is insured for disability insurance benefits through June 30, 2008 (R. at 13). At step one, the ALJ found that plaintiff did not

engage in substantial gainful activity since May 11, 2004, the alleged onset date (R. at 13). At step two, the ALJ found that plaintiff had the following severe impairments: Hepatitis C, left hip pain syndrome, osteoarthritis, depressive disorder NOS, and alcohol dependence (R. at 13). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 14). After determining plaintiff's RFC (R. at 14), the ALJ found at step four that plaintiff is able to perform past relevant work (R. at 18). In the alternative, at step five, the ALJ found that plaintiff can perform other jobs that exist in significant numbers in the national economy (R. at 19). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 20).

**III. Did the ALJ err in his consideration of the opinions of Dr. Bean, a treating physician?**

On February 17, 2007, Dr. Bean, plaintiff's treating physician, filled out a Hepatitis C RFC questionnaire. Dr. Bean indicated that plaintiff's experience of fatigue, pain, or other symptoms were frequently severe enough to interfere with attention and concentration needed to perform even simple work tasks. Dr. Bean stated that plaintiff was only capable of low stress jobs (R. at 386). Dr. Bean opined that plaintiff could sit for less than 2 hours in an 8 hour day, and could stand/walk for less than 2 hours in an 8 hour day; she concluded that

plaintiff could not work an 8 hour day, 40 hour week. She noted that plaintiff would need to be able to shift positions at will from sitting, standing or walking. She also felt that plaintiff would need over 10 unscheduled breaks during an 8 hour day because of pain and fatigue (R. at 387). She further indicated that plaintiff would need to keep her leg(s) elevated 50-75% of the time (R. at 388).

The ALJ found that plaintiff could lift and/or carry 10 pounds frequently, 20 pounds occasionally, could sit for 6 hours in an 8 hour workday, and stand/walk for 6 hours in an 8 hour workday. The ALJ further indicated that plaintiff could have no significant interaction with the general public and is limited to simple, repetitive routine work consistent with unskilled work (R. at 14). The ALJ then stated the following concerning the above opinions of Dr. Bean:

> The undersigned does not give controlling weight to the opinion of Linda Bean, M.D., a treating physician, because the doctor's opinion of the claimant's functional limitations were given only four days after the claimant began Interferon medical treatment for Hepatitis C. The doctor's opinion is not consistent with the longitudinal record. Additionally, on March 2, 2007, it is documented that the claimant's symptoms associated with Hepatitis C had improved. (Exhibit 12F-147).

(R. at 18).

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of

treatment are given more weight over the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;

(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion. If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

In this case, the ALJ did not give controlling weight to the opinions of Dr. Bean. In the determination of issues reserved to the Commissioner, such as opinions regarding: whether an impairment meets or equals a listing, plaintiff's RFC, whether a plaintiff can do past relevant work, how age, education, and work experience apply, and whether a plaintiff is disabled, treating source opinions are not entitled to special significance or controlling weight. Soc. Sec. Rul. 96-5p, (Medical Source Opinions on Issues Reserved to the Commissioner), 1996 WL 374183, at *2. Therefore, the opinions of Dr. Bean that plaintiff is disabled or in regards to plaintiff's RFC limitations are clearly not entitled to controlling weight. However, the ALJ failed to indicate, what weight, if any, he gave to the opinions of Dr. Bean. The ALJ is still required to assess the weight to be given to the opinions of Dr. Bean, applying the factors set forth above. Wade v. Astrue, 2008 WL 193236 at *2 (10th Cir. Jan. 23,

2008).

One of the problems with the ALJ's decision is that the ALJ failed to indicate what evidence he relied on in making his RFC findings. According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." SSR 96-8p, 1996 WL 374184 at *7. The ALJ simply indicated that he did not give controlling weight to the opinions of Dr. Bean, but he failed to indicate what weight, if any, he accorded her opinions. The ALJ also indicated that he gave the state agency medical opinions little weight because evidence received at the hearing level showed that the plaintiff is more limited than determined by the state agency consultants (R. at 18).[1] Thus, the ALJ established an RFC for the plaintiff with some limitations in lifting and/or carrying, with limitations in interacting with the general public and also a limitation to simple, repetitive routine unskilled work. However, the ALJ failed to identify what evidence supported his RFC findings, or whether he gave some weight to the opinions of Dr. Bean when he established an RFC for plaintiff after

---

[1]Although the ALJ did not clearly indicate what state agency medical opinion was to be given little weight, the ALJ had previously mentioned the examination by Dr. Komes, a consultative examiner, who indicated on August 24, 2004 that plaintiff had no significant abnormalities that would prohibit sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking or traveling (R. at 17, 337-338).

acknowledging that plaintiff was more limited than had been determined by the state agency consultants.

The ALJ failed to articulate what lesser weight, if any, he accorded to the opinions of Dr. Bean. Although the ALJ need not necessarily discuss all of the factors when deciding what weight to accord to a medical opinion, in this case the ALJ failed to discuss many of the factors (i.e., the ALJ failed to discuss the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, including the treatment provided and the examinations or testing performed) and he made no finding as to the weight to be accorded to Dr. Bean's opinions. The court must therefore remand because it cannot meaningfully review the ALJ's determination absent findings explaining the weight assigned to the opinions of Dr. Bean. Watkins, 350 F.3d at 1301; Wade, 2008 WL 193236 at *2.

In addition, there are problems with the rationales put forward by the ALJ for discounting the opinions of Dr. Bean. The ALJ indicated that the opinions of Dr. Bean were given only four days after the plaintiff began receiving Interferon treatment for Hepatitis C. However, the ALJ failed to indicate the significance, if any, of this information. Dr. Bean did opine that plaintiff's impairments had lasted or could be expected to last for 12 months (R. at 386). No medical opinion disputed this finding by Dr. Bean. There is no medical opinion evidence

regarding the impact, if any, of the Interferon treatment on plaintiff's impairments. The ALJ is not entitled to *sua sponte* render a medical judgment without some type of support for his determination. The ALJ's duty is to weigh conflicting evidence and make disability determinations; he is not in a position to render a medical judgment. Bolan v. Barnhart, 212 F. Supp.2d 1248, 1262 (D. Kan. 2002).

The ALJ also noted that the records showed that plaintiff had "improved" on March 2, 2007 (R. at 18). The medical record cited by the ALJ appears to indicate that plaintiff was doing "OK", noting that she had flu-like symptoms on initiation of the therapy, but got better (R. at 390). Furthermore, even if the record could be construed as indicating that plaintiff had "improved", there is no medical opinion evidence that the fact that plaintiff was doing better negated the opinions of Dr. Bean regarding plaintiff's ability to work. See Shontos v. Barnhart, 328 F.3d 418, 427 (8th Cir. 2003)(court noted that no medical source provided an opinion that the fact that Ms. Shontos did better while on medication negated the opinions of Dr. Burns that Ms. Shontos would have difficulty with detailed instructions).

Finally, the ALJ made the statement that the opinions of Dr. Bean are "not consistent with the longitudinal record" (R. at 18). However, the ALJ failed to mention that plaintiff's treatment provider indicated 3 years earlier, on June 8, 2004,

that plaintiff will tire easily due to hepatitis C and will probably be unable to work due to fatigue and missing an increased amount of work (R. at 308). Furthermore, the ALJ did not then proceed to explain why the opinions of Dr. Bean are not consistent with the longitudinal record. As in Hamlin v. Barnhart, 365 F.3d 1208, 1217 (10th Cir. 2004), the ALJ, in stating that Dr. Bean's opinion was inconsistent with the overall record, failed to specifically highlight those portions of the record which were allegedly inconsistent with the opinions of Dr. Bean. In fact, in the very next paragraph, the ALJ himself gave little weight to the opinions of the state agency consultants, acknowledging that the evidence at the hearing stage established that plaintiff was more limited than had been found by the state agency consultants. The ALJ failed to cite to any other medical evidence in the record that specifically addressed plaintiff's ability to work or the nature or extent of her limitations.

In earlier portions of his opinion, the ALJ did state that plaintiff performed substantial gainful activity well after her alleged onset date of disability without restrictions (R. at 18). Defendant, in their brief, mentioned plaintiff's testimony that "she continued to work full-time as a stocker for Wal-Mart for nearly two years after her May 2004 alleged onset of disability" (Doc. 16 at 20). However, that is an inaccurate summary of plaintiff's testimony. Plaintiff testified she last worked for

Wal-Mart for a few months in 2006 on a full-time basis. However, she had to quit that work because they were pressuring her to work faster and she could not. Plaintiff testified that she missed several days because she was just too tired, and that she was worn out and needed to rest. Plaintiff indicated that she did not attempt to work at any other place since May 11, 2004 (R. at 411-414). The evidence does not show that plaintiff worked full-time for nearly two years after 2004. Furthermore, the ALJ's statement that plaintiff performed substantial gainful activity well after her alleged onset date of disability without restrictions is contradicted by the ALJ's earlier finding that plaintiff "has not engaged in substantial gainful activity since May 11, 2004, the amended alleged onset date" (R. at 13).

The ALJ noted that plaintiff daily activities are "basically normal," noting that she performs household tasks. The ALJ indicated that plaintiff testified that she reads in her spare time. The ALJ then stated that "She did not indicate any difficulty with this activity [reading]" (R. at 15-16). The ALJ further noted that plaintiff spends time watching television (R. at 16). The ALJ later indicated that the fact that plaintiff's daily activities are "basically normal" indicates that her fatigue is not as severe as she alleges (R. at 17). However, one does not need to be utterly or totally incapacitated in order to be disabled. Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir.

2001); Jones v. Sullivan, 804 F. Supp. 1398, 1405 (D. Kan. 1992). The fact that one engages in household chores and ordinary life activities is not inconsistent with complaints of pain, and in no way directs a finding that a person is able to work. Draper v. Barnhart, 425 F.3d 1127, 1130-1131 (8th Cir. 2005). Plaintiff's ability to engage in household chores and ordinary life activities, including the ability to read without difficulty and watch television, does not provide substantial evidence to support the ALJ's finding that the opinions of Dr. Bean are not consistent with the longitudinal record.

In summary, the ALJ erred by failing to specify, what weight, if any, should be accorded to the opinions of Dr. Bean. The ALJ also provided rationales for discounting the opinions of Dr. Bean that were not supported by substantial evidence. Therefore, this case should be remanded in order for the ALJ to fully evaluate the opinions of Dr. Bean in light of all the evidence, and then set forth what weight, if any, should be accorded to her opinions, utilizing the factors set forth above. If the ALJ finds the opinions of Dr. Bean inconsistent with the record, the ALJ should specifically highlight those portions of the record which the ALJ finds to be inconsistent with her opinions. If the ALJ's RFC findings conflict with the medical opinion of Dr. Bean, or any other medical opinion, the ALJ must explain why their opinions were not adopted. SSR 96-8p, 1996 WL

374184 at *7.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on December 10, 2008.

s/Donald W. Bostwick
DONALD W. BOSTWICK
United States Magistrate Judge